IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JENNIFER STICHER, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 1:15-CV-896-SCJ-JCF |
| PNC BANK NATIONAL ASSOCIATION, | : |
| Defendant. | : |

**NON-FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Defendant PNC Bank National Association's ("PNC") motion to dismiss. (Doc. 9). It is **RECOMMENDED** that PNC's motion be **GRANTED in part** and **DENIED in part**.

**Facts And Procedural History**[1]

On June 1, 2004, Plaintiff Jennifer Sticher obtained a equity line of credit from RBC Centura Bank ("RBC") in the amount of $95,000.00, secured by Plaintiff's residence at 645 West Powderhorn Road, Atlanta, Georgia in Fulton

---

[1] The Court will consider Plaintiff's Amended Complaint (Doc. 6) as well an order from the Superior Court of Fulton County regarding this loan (Doc. 6 at 12-13) and the original security deed which is attached to the motion to dismiss (Doc. 9-2). In ruling on a motion to dismiss, the court may consider documents attached to the motion if those documents are central to the complaint and not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged").

1

County, as evidenced by a Security Deed recorded in deed book 37998, pages 478 to 482 of the property records of Fulton County.[2] (*See* Doc. 9-2; Doc. 6 at ¶ 4). At some later point, Plaintiff stopped making payments on the loan and on April 11, 2011, RBC filed suit against both Plaintiff and her husband, Michael Sticher, in the Superior Court of Fulton County to enforce the provisions of the security deed. (Doc. 6 at ¶ 5). While this suit was pending, Plaintiff and her husband divorced. (*Id.* at ¶ 6). After the divorce was finalized, the parties reached a settlement agreement regarding the Superior Court case. (*Id.* at ¶ 7). In the consent order filed in the Superior Court on April 12, 2012, Michael Sticher, Plaintiff's husband, agreed to pay RBC $73,000 in monthly installments of $200 beginning on May 1, 2012. (*See id.* at 12). The consent order further states, that in the event that Michael Sticher fails to make payments pursuant to the order, the "Consent Order may be converted into a Judgment upon submission of an Affidavit to the Court" by RBC. (*Id.* at 13). The order concludes that "[u]pon payment in full of the settlement amount, [RBC] shall dismiss the above-captioned case with prejudice." (*Id.*). The consent order makes no mention of the security deed and provides no release of liability on the part of the Plaintiff in this case, Jennifer Sticher. (*See id.* at 12-13). In fact, while the statement states that *Defendant* Michael Sticher is the

---

[2] Plaintiff claims that her then husband, Michael Sticher, was involved in this transaction (*see* Doc. 12 at ¶ 4), however, only Plaintiff's name is listed on the security deed (*see* Doc. 9-2 at 2).

2

one who will make the payments, it further provides that in the event of his default and the submission of a judgment, "*Defendants* are to be given credit for all amounts paid against the total amount owed." (*Id.* at 12-13 (emphasis added)).[3]

PNC succeeded RBC in its interest in the loan and, Plaintiff alleges, has been receiving payments from Michael Sticher since at least October 7, 2013. (*Id.* at ¶ 11). Plaintiff further alleges that despite continued payments from Michael Sticher, "PNC continued to furnish information to credit reporting agencies that Plaintiff had a delinquent account balance of $88,977.00." (*Id.* at ¶ 12). As a result, Plaintiff's Georgia Mortgage Loan Originator License, which she needs to conduct her business, was revoked by the Georgia Department of Banking and Finance ("the Department"). (*Id.* at ¶ 13). According to Plaintiff, she learned of PNC's credit reporting when she was investigating the revocation of her license and reported the error to the Department as well as PNC and TransUnion, the credit reporting agency. (*Id.* at ¶ 14). After "several months" of communicating with these entities, Plaintiff's license was reinstated. (*Id.* at ¶ 16). However, Plaintiff alleges that her license was again threatened by the Department as PNC continued to report the account as delinquent, a fact which she learned in January of 2014. (*Id.* at ¶ 17). According to Plaintiff, more than a year after she first

---

[3] Plaintiff alleges that "The Consent Order imposes liability only on Michael Shayne Sticher and not on Jennifer Carter Sticher," (Doc. 6 at ¶ 9), however, that is not made explicit in the order.

3

reported the error to TransUnion and PNC, "PNC made the requisite Fair Credit Reporting Act ("FCRA") investigation, admitted the improper reporting, and notified all reporting agencies to which it had provided information on the account to delete the PNC trade line from Ms. Sticher's report(s)." (*Id.* at 20).

Plaintiff originally filed this case in February of 2015[4] in the Superior Court of Fulton County. (*See* Doc. 1-1). PNC removed the case to this Court on March 30, 2015. (Doc. 1). PNC moved to dismiss the case for failure to state a claim on April 14, 2015 (Doc. 3), however, Plaintiff filed an Amended Complaint on April 17, 2015 (Doc. 6). PNC filed a second motion to dismiss for failure to state a claim on May 4, 2015. (Doc. 9). Plaintiff responded to the motion on May 18, 2015 (Doc. 10) and PNC filed a reply on June 4, 2015 (Doc. 11). On September 30, 2015, District Court Judge Steve Jones denied the initial motion to dismiss (Doc. 3) as moot and referred the matter, including the second motion to dismiss (Doc. 9) to the undersigned. (Doc. 12).

## **Discussion**

---

[4] PNC did not attach a stamped copy of the state court Complaint with its notice of removal and therefore it is not clear when the case was filed in state court. Plaintiff's initial Complaint is dated as being submitted on February 6, 2015. (*See* Doc. 1-1). PNC states in its notice of removal, however, that the case was filed February 27, 2015. (Doc. 1 at 2). At this point, although there is a statute of limitations argument contained in the motion to dismiss, the parties have not developed any arguments concerning the actual date of the state court filing. For the purposes of this motion which has been brought by the PNC, the undersigned will treat the case as having been filed on the date most favorable to the Plaintiff, February 6, 2015.

Plaintiff's Amended Complaint raises three claims: a claim brought under the Fair Credit Reporting Act (Doc. 6 at ¶¶ 23-29); a claim for "slander of title" (*id.* at ¶¶ 30-35); and a claim seeking a declaratory judgment seeking "cancellation, removal or reformation" of the security deed (*id.* at ¶¶ 36-39). PNC's motion to dismiss seeks to dismiss all three of these claims.

## I.     Applicable Pleading Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79. To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' "  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

## II.   FCRA Claim

Plaintiff's first claim is for damages resulting from a violation of the Fair Credit Reporting Act (FCRA).  The purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit [etc.] in a manner which is fair and equitable to the consumer, with regards to confidentiality, accuracy, relevancy, and proper utilization."  15 U.S.C. § 1681(b).  Plaintiff asserts that PNC violated the statute when it misreported that Plaintiff was in default on the mortgage after PNC's predecessor had agreed to a settlement with Plaintiff's ex-husband.  (*See* Doc. 6 at ¶¶ 23-29).  PNC argues that these claims should be dismissed as: (1) the statute of

limitations has run on the actions Plaintiff complains of; and (2) Plaintiff has failed to alleged facts necessary to set out a claim under the FCRA. (Doc. 9-1 at 6-9).

The FCRA requires private rights of action be brought either within 2 years of a plaintiff learning of the violation or within five years of the violation, whichever is earlier. 15 USC § 1681p. In her initial Complaint, Plaintiff alleged that her license was first revoked in December 2012 and that she learned of PNC's report to credit agencies when investigating the revoking of her license. (*See* Doc. 1-1 at ¶¶ 13-14). After an initial motion to dismiss had been filed, Plaintiff filed an Amended Complaint that removed allegations regarding the timing of the revoking of the license; the Amended Complaint simply has no dates for this or most of the background information in the case. (*See* Doc. 6). This case was brought sometime in February of 2015. While it does not include specific dates for the initial issue, Plaintiff's Amended Complaint does allege that after the first issue was resolved, PNC once again furnished inaccurate information to credit reporting agencies, which Plaintiff learned of in January 2014. (*See* Doc. 6 at ¶ 18). This second alleged violation clearly falls within the time allowed by the two year statute of limitations and, therefore, it is possible for Plaintiff to set out a claim under the FCRA. It is important to clarify, that while the undersigned does not recommend dismissing this claim at this time due to the statute of limitations, any potential violations that Plaintiff learned of more than 2 years prior to this case

being filed cannot be used to support a claim under the FCRA.  Plaintiff must rely solely on events that meet the statute of limitations, however, due to Plaintiff's convenient lack of dates in her Amended Complaint, and the fact that she does allege that a second potential violation occurred in January 2014, at least part of Plaintiff's claim is not barred by the statute of limitations.

PNC next argues that, even if this claim is not barred by the statute of limitations, Plaintiff has failed to allege facts to the level of detail necessary to sustain a claim under the FCRA. (Doc. 9-1 at 8).  The FCRA imposes a duty upon furnishers "to investigate and respond promptly to a notice of a dispute regarding the completeness or accuracy of information provided to a credit reporting agency."  *Caselli v. PHH Mortg. Corp.*, No. 1:11-CV-2418-RWS, 2012 WL 124027, at *7 (N.D.Ga. Jan. 13, 2012)   (citing 15 U.S.C. § 1691s-2(b)).  Plaintiff alleges that despite continued payments from Michael Sticher, "PNC continued to furnish information to credit reporting agencies that Plaintiff had a delinquent account balance of $88,977.00."  (*Id.* at ¶ 12).  She further alleges that "[e]ven after [she] notified TransUnion and PNC of the inaccurate reporting, PNC failed to investigate the dispute, correct the error, or notify the properly reporting agencies about the corrections to Plaintiff's information."  (Doc. 6 at ¶ 28).  PNC argues that Plaintiff was not specific enough with her allegations.

While Plaintiff could have potentially provided more detail, she has alleged

8

what is necessary to clearly assert all elements of an FCRA claim. PNC demands a degree of detail not required by the governing law. For example, PNC argues that Plaintiff "never specifies the exact information that she believes was inaccurate reported nor how she complied with the requirements of the statute to support a claim for violation of the FCRA." (Doc. 9-1 at 7). It is evident from the Complaint that Plaintiff is complaining that PNC reported that the mortgage loan which was the subject of the previous lawsuit was in default. And, while as PNC argues, Plaintiff does not provide the exact dates of when she contacted the credit reporting agency or when the credit reporting agency reported the issue to PNC, she does assert that she notified both the credit reporting agency and PNC of the issue. That is enough information at this point to sustain the claim.

Finally, any factual argument that the challenged conduct is not a violation because PNC was not in the wrong by reporting the default to the agency is a fact issue that the Court cannot resolve at this time. As discussed below, the Plaintiff's argument that the prior state court case cancelled the security deed does not carry the day, however, that does not mean that Plaintiff is precluded from arguing that the reporting of this loan as in default was inaccurate. Plaintiff could still show the loan was not in default as her husband was still making payments. If she does so, then the reporting may be inaccurate and Plaintiff has alleged that she informed the appropriate parties. Because Plaintiff has alleged that her husband was still

making the payments, that she informed the credit reporting agency and PNC of the issue, and that PNC continued to report the inaccurate information, she has pled facts to sustain a claim at this point.

Therefore, It is **RECOMMEDNED** that PNC's motion to dismiss as to Plaintiff's FCRA claim is **DENIED**.[5]

### III.   Slander Of Title Claim And Request For Declaratory Judgment

Plaintiff seeks damages for slander of title because PNC "maliciously refuses to remove or cancel the aforementioned Security Deed and continues to hold Plaintiff responsible for the debt secured by the Property."  (Doc. 6 at ¶ 34). Plaintiff also seeks a declaratory judgment cancelling the security deed.  (Doc. 6 at ¶ 37).  Plaintiff argues that this is appropriate because her obligations under the security deed were completed with the "Final Consent Order" from the Superior Court case.  (Doc. 6 at 12-13).  The consent order states Michael Sticher and RBC Bank reached an agreement where Michael would make monthly payments on the outstanding balance of the loan.[6]  The consent order further indicates that if Michael fails to make payments the consent order could be converted into a

---

[5] As discussed above, despite the fact that the motion must be denied as to this claim at this point based on what Plaintiff has alleged, the statute of limitations would still operate to bar any claims that were factually based on violations of the FCRA which Plaintiff learned of more than two years prior to the filing of this case.

[6] It is important to note that the attorney for Jennifer Sticher also signed off on this agreement.

judgment by RBC Bank.  If the full settlement amount was paid, the Plaintiff in that case (RBC and now PNC) would dismiss the state case with prejudice.

The consent order makes no mention of the security deed or the rights and obligations of Jennifer Sticher, the Plaintiff in this case.  Jennifer Sticher seeks to use that order as the basis for these two claims; however, nothing in the consent order changes the security deed.  Plaintiff's conclusory allegation that the consent order cancels the security deed does not overcome the clear language of the order which indicates no such outcome.  Further, the consent order does not even conclude the previous case, which was brought by the bank to enforce the terms of the security deed.  The plain terms of the order indicate that the case will not be completed until Michael Sticher finishes making payments, in which case the bank is required to dismiss the case with prejudice.  One would logically assume that the security deed would be cancelled once Michael Sticher completes the payments but Plaintiff has not alleged that those payments have all been made.

In Georgia, cancellation of a security deed is governed by O.C.G.A. § 44-14-67, which provides in relevant part that "[i]n all cases where property is conveyed to secure a debt, the surrender and cancellation of the deed, in the same manner as mortgages are cancelled, *on payment of the debt* to any person legally authorized to receive the same, shall operate to reconvey the title of the property to the grantor or the grantor's heirs, executors, administrators, or assigns."  O.C.G.A. § 44-14-67(a)

11

(emphasis added).  Plaintiff has not alleged that the debt has been paid in full.  Further, as described above, the consent order from the previous case does nothing to impact the security deed; at least until the settlement amount is paid in full (which Plaintiff has not alleged has occurred).  The security deed serves to convey an interest in the property in order to secure the debt, even if Plaintiff was considered to no longer be personally liable for the debt, the property would still be encumbered by the security deed absent an explicit cancellation in the final consent order.  Plaintiff's slander of title and declaratory judgment claims must fail as both rely on the idea that the security deed is no longer binding.

Therefore, the undersigned **RECOMMENDS** that Plaintiff's claim for slander of title and request for declaratory judgment cancelling or removing the security deed be **DISMISSED.**

## Conclusion

It is **RECOMMENDED** that PNC's motion to dismiss Plaintiff's Amended Complaint (Doc. 9) be **GRANTED in part** and **DENIED in part**.  It is **RECOMMENDED** that PNC's motion be **GRANTED** as to Plaintiff's claim for slander of title and request for declaratory judgment but **DENIED** as to Plaintiff's claim brought under the FCRA[7].

---

[7] With the caveat that any events discovered by Plaintiff two years prior to this instigation of this action could not be the basis of her FCRA claim as they are barred by the statute of limitations.

**IT IS SO REPORTED AND RECOMMENDED** this <u>19th</u> day of <u>January</u>, 2016.

                                          <u>/s/ *J. CLAY FULLER*</u>
                                          J. CLAY FULLER
                                          United States Magistrate Judge